MARK A. HUTCHISON (4639)
ROBERT T. STEWART (13770)
HUTCHISON & STEFFEN, LLC
10080 W. Alta Drive, Suite 200
Las Vegas, NV 89145
(702) 385-2500
Fax: (702) 385-2086
mhutchison@hutchlegal.com
rstewart@hutchlegal.com

ANDREW M. GROSSMAN (*pro hac vice application* forthcoming)
MARK W. DELAQUIL (*pro hac vice application* forthcoming)
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W., Suite 1100
Washington, D.C. 20036
(202) 861-1697
Fax: (202) 861-1783
agrossman@bakerlaw.com

*Attorneys for Plaintiffs Gilbert P. Hyatt and
American Association for Equitable Treatment, Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| **GILBERT P. HYATT and AMERICAN ASSOCIATION FOR EQUITABLE TREATMENT, INC.,**<br><br>Plaintiffs,<br>v.<br><br>**OFFICE OF MANAGEMENT AND BUDGET and SHAUN DONOVAN, in his official capacity as Director of the Office of Management and Budget,**<br><br>Defendants. | Case No. _____<br><br>**Complaint for Declaratory Relief** |

1

Plaintiffs Gilbert P. Hyatt and American Association for Equitable Treatment, Inc. ("AAET"), by and through the undersigned counsel, allege for their complaint against the Office of Management and Budget ("OMB") and Director Shaun Donovan, in his official capacity, as follows:

## Jurisdiction and Venue

1. This is an action seeking relief under the Administrative Procedure Act ("APA"). The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1346(a)(2) (United States as defendant), because it arises under the laws of the United States, and the OMB and Director Donovan are Defendants.

2. This Court has authority to grant Mr. Hyatt's requested relief pursuant to 5 U.S.C. §§ 701–706 and 28 U.S.C. §§ 2201–2202.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e)(1)(C) because Plaintiff Hyatt resides in Nevada and Plaintiff AAET's principal place of business is in Nevada.

## Nature of the Action

4. AAET and Mr. Hyatt, who is an AAET member and inventor and owner of more than 70 issued patents, bring this action under the Administrative Procedure Act ("APA"). They challenge OMB's denial of Mr. Hyatt's Petition under 44 U.S.C. § 3517(b) asking OMB to determine that collections of information contained in rules promulgated by the United States Patent and Trademark Office ("PTO") in 37 C.F.R. §§ 1.111, 1.115, and 1.116 ("Rules 111, 115, and 116") are subject to the requirements of the Paperwork Reduction Act ("PRA") but have not been approved by OMB and assigned valid OMB Control Numbers, as the PRA requires. OMB's denial of Mr. Hyatt's Petition violates the PRA and the APA, burdening inventors and entrepreneurs with unapproved and expensive paperwork.

5.  Congress enacted the PRA to minimize such agency-imposed burdens, and charged OMB with overseeing agency collections of information. Before an agency conducts or sponsors a covered collection of information, the PRA requires that the agency seek OMB approval and obtain an "OMB Control Number" certifying PRA compliance. But OMB appears to have fallen asleep at its post. For years, OMB has failed to scrutinize the collections of information contained within rules of general applicability promulgated by the PTO or ensure that the PTO complied with the requirements of the PRA with respect to the paperwork it uses to collect information from patent applicants.

6.  The PRA contemplates that agencies may fail to comply with its requirements and proceed with unapproved collections of information, and so authorizes the public to "request the [OMB] Director to review any collection of information conducted by or for any agency to determine if, under the PRA, a person shall maintain, provide, or disclose the information to or for the agency." 44 U.S.C. § 3517(b). Mr. Hyatt petitioned OMB (the "Petition") pursuant to that provision to review certain PTO collections of information, but was rebuffed in a cursory, one-page emailed denial. OMB's denial cited an OMB Control Number for the Federal Communications Commission (not the PTO) and a passage from an OMB Notice of Action that contains no reasoning or discussion regarding the specific collections of information that were the subject of Mr. Hyatt's Petition.

7.  AAET and Mr. Hyatt now seek review of the denial of his Petition, and ask this Court to find OMB's denial arbitrary and capricious and contrary to law within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706.

**Parties**

8.  Plaintiff Gilbert P. Hyatt is an engineer, scientist, and inventor who has more than 70 issued patents. Mr. Hyatt is currently awaiting approval on another nearly 400 patent applications. In connection with those applications, Mr. Hyatt has been subject and may again be

3

subject to collections of information established by the PTO under Rules 111, 115, and 116. He resides in Clark County, Nevada.

9. Plaintiff American Association for Equitable Treatment, Inc., is a non-profit corporation that operates as a social-welfare organization pursuant to Section 501(c)(4) of the Internal Revenue Code. AAET was founded in 2016 to promote and advocate for the fair, efficient, and effective administration of laws related to technology, innovation, and intellectual property, including the Patent Act and related statutes. Mr. Hyatt is a member of AAET. AAET's principal office is located in Clark County, Nevada.

10. Defendant Office of Management and Budget is the federal agency responsible for, among other things, administering the PRA and policing federal agencies' compliance with the PRA. OMB is located in Washington, D.C.

11. Defendant Shaun Donovan is Director of the Office of Management and Budget. In performing those duties, Director Donovan has overall responsibility for the administration and operation of OMB, including administration of the PRA and acting on Section 3517(b) petitions. *See generally* 44 U.S.C. §§ 3504(a), 3504(c), 3507, 3517(b). He is sued in his official capacity only.

## Facts

12. Mr. Hyatt is an accomplished inventor, with more than 70 issued patents to his credit. Some of his patents and applications cover microcomputer structure, computer memory architecture, illumination devices, display devices, graphics systems, image processing, and sound and speech processing.

13. Mr. Hyatt currently has nearly 400 patent applications pending before the PTO.

14. In the course of prosecuting these patent applications, Mr. Hyatt has experienced first-hand the unnecessary, duplicative, and overly burdensome information collection demands

that the PTO imposes on individuals seeking patents, including with respect to the collections of information contained in Rules 111, 115, and 116.

15. For example, after inaction for several years on Mr. Hyatt's pending applications, in 2013 the PTO imposed requirements for information collection and disclosure with respect to almost all of his applications. These requirements include responding at various phases of prosecution under Rules 111, 115, and 116.

16. On August 1, 2013, pursuant to 44 U.S.C. § 3517(b), Mr. Hyatt filed a Petition requesting that Defendant Donovan review certain of the PTO's collections of information contained in PTO Rules 111, 115, and 116. Att. 1. He requested that Donovan determine that patent applicants "are not required to have maintained, provided, or disclosed the collections of information" made under these Rules because they have "no valid OMB control number[s]." *Id.*

17. Mr. Hyatt's Petition incorporated a 17-page analysis explaining why the collections of information contained in Rules 111, 115, and 116 are subject to the PRA and therefore must be approved by OMB and assigned valid OMB Control Numbers. Att. 2.

18. On September 13, 2013, OMB denied Mr. Hyatt's Petition in a one-page email. Att. 3.

19. OMB's denial cited a Control Number (3060-0031) for the Federal Communications Commission (not the PTO); cited a passage from an OMB Notice of Action (Att. 4) that purported to address, without any discussion, Rules 111, 115, or 116; and invoked without explanation regulatory exceptions to the definition of "information" that were not mentioned in the OMB Notice of Action.

20. OMB's denial of Mr. Hyatt's Petition marked the consummation of its decision-making process, and therefore is final agency action subject to judicial review.

## The Paperwork Reduction Act Requires OMB Review and Approval of Agency "Collections of Information"

21. Congress enacted the Paperwork Reduction Act in 1980 (Pub. L. No. 96-511, 94 Stat. 2812), and amended and expanded it in 1995 (Pub. L. No. 104-13, 109 Stat. 163). The purpose of the PRA is "to minimize the paperwork burden for individuals, small businesses,…and other persons resulting from the collection of information by or for the Federal Government." 44 U.S.C. § 3501(a). "[T]o accomplish this goal, Congress set forth a comprehensive scheme designed to reduce the paperwork burden and designated the Office of Management and Budget (OMB) to oversee other federal agencies with respect to paperwork." *Gossner Foods, Inc. v. EPA*, 918 F. Supp. 359, 364 (D. Utah 1996).

22. Specifically, OMB has a statutory duty to review covered collections of information to ensure that they comply with the PRA, including the "reduction of the information collection burden" on the public. 44 U.S.C. § 3504(a)(1)(B)(i).

23. The PRA prescribes the procedures an agency must follow before it can collect information from the public. Among other things, an agency must "conduct[] the review specified under section 3506(c)(1)" for need and burden, "evaluate[] the public comments received" in response to Federal Register notices, submit "the proposed collection of information, copies of pertinent statutory authority, regulations, and other related materials" to OMB, certify that the proposed collection is necessary and has practical utility, is not unnecessarily duplicative, and reduces to the extent practicable and appropriate the burden on respondents, and "publish[] a notice in the Federal Register" announcing submission to OMB with a second opportunity for public comment. 44 U.S.C. § 3507(a)(1)(A)–(D).

24. An agency must obtain an OMB Control Number prior to conducting or sponsoring a "collection of information." The phrase "collection of information" is broadly defined by the PRA and OMB regulations. 44 U.S.C. § 3502(3); 5 C.F.R. § 1320.3(c).

25. Under the PRA, "collection of information" generally encompasses any agency request or demand for information from the public that is addressed to ten or more "persons" in a 12-month period. *See* 44 U.S.C. § 3502(3) and 5 C.F.R. § 1320.3(c) (defining "collection of information); 44 U.S.C. § 3502(10) and 5 C.F.R. § 1320.3(k) (defining "person"). "Collection of information" includes "the obtaining, causing to be obtained, soliciting, or requiring the disclosure to third parties or the public, of facts or opinions by or for an agency, regardless of form or format, calling for…answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, *ten or more persons*." 44 U.S.C. § 3502(3)(A)(i) (emphasis added). *See also* 5 C.F.R. § 1320.3(c)(4) (stating that the phrase "ten or more persons" refers to ten or more persons "within any 12-month period")

26. An information collection "contained in a rule of general applicability is deemed to involve ten or more persons." 5 C.F.R. § 1320.2(c)(4)(i).

27. An agency collection of information can come in any form or format, from a standardized, printed questionnaire to an oral question. As OMB regulations provide, a collection of information includes: "report forms; application forms; schedules; questionnaires; surveys; reporting or recordkeeping requirements; contracts; agreements; policy statements; plans; rules or regulations; planning requirements; circulars; directives; instructions; bulletins; requests for proposal or other procurement requirements; interview guides; oral communications; posting, notification, labeling, or similar disclosure requirements; telegraphic or telephonic requests; automated, electronic, mechanical, or other technological collection techniques; standard questionnaires used to monitor compliance with agency requirements; or any other techniques or technological methods used to monitor compliance with agency requirements." 5 C.F.R. § 1320.3(c)(1).

28. The application of PRA requirements does not depend on whether the collection of information is required or optional. As OMB regulations explain, the PRA applies "whether such

collection of information is mandatory, voluntary, or required to obtain or retain a benefit." 5 C.F.R. § 1320.3(c).

29. When OMB approves a collection of information, it assigns the collection an "OMB Control Number" permitting the agency to collect the information from the public. The OMB Control Number must "be displayed upon the collection of information" in order to notify the recipient that the agency has complied with the PRA. 44 U.S.C. § 3507(a)(3).

30. The PRA includes several provisions to ensure that agencies obtain OMB Control Numbers before collecting information. One is the provision that "no person shall be subject to any penalty for failing to comply with a collection of information…if (1) the collection of information does not display a valid control number…; or (2) the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number." 44 U.S.C. § 3512(a)(1), (2).

31. The PRA authorizes the public to petition the OMB "to review any collection of information conducted by or for an agency to determine, if, under [the PRA], a person shall maintain, provide, or disclose the information to or for the agency." 44 U.S.C. § 3517(b). "Unless the request is frivolous," the OMB is required to "respond to the request" and "take appropriate remedial action, if necessary." 44 U.S.C. § 3517(b)(1), (2).

**In Violation of the PRA, the information collections contained in PTO Rules 111, 115, and 116 Have Not Received Required OMB Approval and Control Numbers**

32. The PTO is subject to the PRA because it is a covered Federal agency. 44 U.S.C. § 3502(1).

33. Rule 111 establishes the information-collection requirements an applicant must follow to reply to a non-final PTO action. 37 C.F.R. § 1.111. It requires that the applicant supply substantial and substantive new information, such as information "which distinctly and specifically

points out the supposed errors in the examiner's answer." 37 C.F.R. § 1.111(b). It also requires that the applicant "reply to *every ground of objection and rejection* in the prior Office Action," and "present arguments pointing out the specific distinctions believed to render the claims, including any newly presented claims, patentable over any applied references." *Id.* (emphasis added). And, if the applicant is amending a reply to a rejection of claims, Rule 111 prescribes a host of other, particularized information-collection requirements. 37 C.F.R. § 1.111(c).

34. The collections of information contained in Rule 111 are implemented by the guidance contained in PTO's Manual of Patent Examining Procedure ("MPEP") §§ 714.02, 714.03(a), 2266, and 2666, including "Form Paragraphs" that are sent to similarly situated applicants. *See generally* MPEP Form Paragraphs.[1] Pursuant to that guidance, multiple applicants receive the same standardized rejections, including form language requesting information, and thus multiple applicants are required by Rule 111 to supply responsive information. Hundreds of thousands of submissions under Rule 111 are made every year.

35. Rule 115 establishes information collection requirements for filing a preliminary amendment to a patent application. A "preliminary amendment" is an amendment to a patent application that is received in the PTO on or before the mail date of the first Office action on the application. 37 C.F.R. § 1.115(a). The Rule requires that "[a] preliminary amendment seeking cancellation of all the claims" include "any new or substitute claims," or otherwise it will be "disapproved." 37 C.F.R. § 1.115(b)(1). Rule 115 further requires that "[a] preliminary amendment" be filed "in compliance with 37 C.F.R. § 1.121" ("Rule 121"). 37 C.F.R. § 1.115(b). Rule 121, in turn, instructs an applicant seeking an amendment to supply detailed information about the location of the paragraphs being amended, a full text of replacement paragraphs, and markings "show[ing] all the changes relative to the previous version." 37 C.F.R. § 1.121(b)(1)(i)–(iv).

---

[1] *Available at* http://www.uspto.gov/web/offices/pac/mpep/FPs.html.

36. The collections of information contained in Rule 115 are implemented by the guidance contained in MPEP § 714.01(e).

37. Rule 116 establishes the information collection requirements for amending an application after a final PTO action. 37 C.F.R. § 1.116. It describes the form and content of an "after-final" amendment, and instructs an applicant to comply with the "requirement of form expressly set forth in a previous Office action" or "present[] rejected claims in better form for consideration on appeal." 37 C.F.R. § 1.116(b)(1), (2).

38. The collections of information contained in Rule 116 are implemented by the guidance contained in MPEP § 714.12. The PTO also uses Form Paragraphs to solicit such information. For example, Form Paragraph 8.12 requires particular forms to link claims and advises that such "[a]mendments submitted after final rejection are governed by 37 CFR 1.116."

39. PTO Rules 111, 115, and 116 contain "collections of information" subject to the PRA because they involve "the obtaining, causing to be obtained, soliciting, or requiring the disclosure to third parties or the public, of facts or opinions" calling for "answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons." 44 U.S.C. § 3502(3).

40. The collections of information contained in PTO Rules 111, 115, and 116 impose "burdens" on the public consisting of "time, effort, or financial resources expended by persons to generate, maintain, or provide information" pursuant to those Rules. 44 U.S.C. § 3502(2).

41. Indeed, the paperwork burdens associated with the collections of information contained in Rules 111, 115, and 116 are substantial. In a supporting statement filed with OMB in 2013 ("Supporting Statement"), the PTO stated that it collects 960,000 responses per year under Rules 111, 115, and 116, which it calls "Amendments and Responses"; that the average time-burden for each response is 8 hours; and that the total paperwork burden associated with these

1 Rules is 7.68 million hours per year. Att. 5 at 14, Item 33. The PTO stated that the aggregate paperwork burdens on the public and the PTO cost about $2.87 billion per year. *Id.*, at 14, 21.

42. PTO Rules 111, 115, and 116 are "rules of general applicability," governing patent application prosecution conduct.

43. The collections of information contained in PTO Rules 111, 115, and 116 are subject to PRA requirements.

44. The collections of information contained in Rules 111, 115, and 116 have not been approved by OMB, have not been assigned OMB Control Numbers, and do not now display, and never have displayed, valid OMB Control Numbers.

**The Exceptions Cited by OMB Do Not Apply to the Collections of Information Contained in PTO Rules 111, 115, and 116**

45. OMB regulations enumerate ten exceptions to the definition of "information." 5 C.F.R. § 1320.3(h)(1)–(10). Agency collections of information that qualify for these exceptions are generally exempt from PRA compliance.

46. OMB invoked three exceptions when it denied Mr. Hyatt's Petition: Sections 1320.3(h)(1); 1320.3(h)(6); and 1320.3(h)(9) (respectively, "Exception 1," "Exception 6," and "Exception 9"). *See* Att. 3. OMB's denial does not state which of these exceptions apply to which Rules and does not address how or why they might apply. *Id.* The OMB Notice of Action cited in the denial does not cite the three exceptions, interpret them, or provide any reasoning as to their potential application to Rules 111, 115, and 116 as required by 44 U.S.C. § 3507(e)(1).

47. The absence of a rationale creates "reason to suspect that the agency's interpretation does not reflect the agency's fair and considered judgment," and is thus not entitled to *Auer* deference. *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1208 n.4 (2015) (quotation marks omitted).

48. OMB did not fairly or reasonably consider the issue. Exceptions 1, 6, and 9 are narrowly tailored and unambiguous and cannot reasonably be interpreted to apply to the collections of information contained in PTO Rules 111, 115, and 116. Those Rules are also not eligible for the other Exceptions enumerated in 5 C.F.R. § 1320.3(h)(1)–(10).

### A. Exception 1: Nonsubstantive Identifying Information Entailing Trivial Burden

49. Exception 1, 5 C.F.R. § 1320.3(h)(1), applies to requests for specific nonsubstantive identifying information. It is limited to requests for "[a]ffidavits, oaths, affirmations, certifications, receipts, changes of address, consents, or acknowledgments; *provided that they entail no burden other than that necessary to identify [1] the respondent, [2] the date, [3] the respondent's address, and [4] the nature of the instrument.*" 5 C.F.R. § 1320.3(h)(1) (emphasis added).

50. PTO Rules 111, 115, and 116 each require a respondent to provide much more information "than that necessary to identify the respondent, the date, the respondent's address, and the nature of the instrument." Indeed, PTO itself estimates that the average time applicants spend to comply with collections of information under Rule 111, 115, or 116 is eight hours. Att. 5, at 14. Exception 1 therefore does not apply to Rules 111, 115, and 116.

### B. Exception 6: Information Request Addressed to Single Person

51. Exception 6, 5 C.F.R. § 1320.3(h)(6), applies "to request[s] for facts or opinions addressed to *a single person*" (emphasis added).

52. Each of PTO Rules 111, 115, and 116 is a "rule of general applicability" that applies to all similarly situated patent applicants and so is not "addressed to a single person." *See* 5 C.F.R. § 1320.2(c)(4)(i). And, as a factual matter according to the PTO, these Rules are used to collect information in 960,000 responses from thousands of persons each year. Accordingly, they are therefore not subject to Exception 6.

53. In addition, the PTO often uses standardized Form Paragraphs or standard language published in the MPEP to conduct collections of information pursuant to Rules 111, 115, and 116. As such, those collections are not "addressed to a single person" and therefore not subject to Exception 6.

### C. Exception 9: Information Request Through Nonstandardized Follow-up Questions

54. Exception 9, 5 C.F.R. § 1320.3(h)(9), applies to requests for "[f]acts or opinions obtained or solicited through nonstandardized follow-up questions designed to clarify responses to approved collections of information."

55. Rules 111, 115, and 116 are rules of general applicability containing requests for information and, as such, are not "follow-up questions" or "designed to clarify responses" to any approved collection of information. Accordingly, they are not subject to Exception 9.

56. PTO examiners use *standardized* "Form Paragraphs" when requesting information under Rules 111 and 116. Accordingly, neither Rule is subject to Exception 9.

57. Submissions under Rule 115 are initiated by applicants and received in the PTO on or before the mail date of the first Office action. These preliminary amendments are sent *before* any communication from the PTO and therefore could not be answers to PTO "follow-up questions designed to clarify responses." Accordingly, that Rule is not subject to Exception 9.

### OMB's Denial of Mr. Hyatt's Petition Is Subject to Judicial Review

58. OMB's Denial of Mr. Hyatt's Petition is a final agency action subject to judicial review under the APA.

59. Under the APA, "final agency action[s] for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Review is available under this provision if: (1) there is "final agency action"; (2) there is no other adequate remedy in court; and (3) Congress has not expressly removed availability of review or otherwise committed the action to

unreviewable agency discretion by law. The denial of Mr. Hyatt's Petition satisfies all three criteria.

60. First, OMB's denial of Mr. Hyatt's Petition constituted a final agency action because it "mark[ed] the consummation of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 177 (1997) (quotation marks omitted). And real legal consequences flow from the denial of the Petition: it excuses the PTO from compliance with the PRA with respect to the collections of information contained in Rules 111, 115, and 116, thereby allowing PTO to subject applicants to those Rules' burdens without prior OMB review and approval. Mr. Hyatt and other applicants cannot obtain patents without complying with the collections of information contained in Rules 111, 115, and 116.

61. Second, seeking judicial review is Mr. Hyatt's and other applicants' sole remedy for OMB's denial of Mr. Hyatt's Petition.

62. If applicants, including Mr. Hyatt, do not comply with the collection of information with respect to an application, PTO will regard that application to be abandoned. *See* 37 C.F.R. § 1.111(a)(1) (providing that applicant "must reply and request further reconsideration…to avoid abandonment"). Although the PRA does provide that "no person shall be subject to any penalty for failing to comply with a collection of information" that lacks a valid OMB Control Number, 44 U.S.C. § 3512(a)(1), that provision does not create an affirmative right of action, and no other provision allows Mr. Hyatt or other applicants to obtain review of OMB's determination.

63. Third, the PRA does not expressly preclude review of denials of petitions under 44 U.S.C. § 3517(b) or otherwise commit action on such petitions to unreviewable agency discretion.

64. The judicial-review bar contained in 44 U.S.C. § 3507(d)(6) does not apply, by its own terms, to denials of Section 3517(b) petitions.

65. The judicial-review bar contained in 44 U.S.C. § 3507(d)(6) applies, by its own terms, "only when an agency publishes a notice of proposed rulemaking and requests public

14

comments." 44 U.S.C. § 3507(d)(5). Neither OMB's denial of Mr. Hyatt's Petition nor its Notice of Action satisfy that requirement.

66. In addition, the judicial-review bar contained in 44 U.S.C. § 3507(d)(6) does not apply because the collections of information contained in Rules 111, 115, and 116, the subject of Mr. Hyatt's Petition, were not fully subject at any time to the procedures in 44 U.S.C. §§ 3507(a)(1)(D), 3507(b), and 3507(d)(2).

67. In addition, the judicial review bar contained in 44 U.S.C. § 3507(d)(6) does not apply because the denial of Mr. Hyatt's Petition is not a decision "by the Director to approve or not act upon a collection of information."

68. Because review is not prohibited, denials of petitions under 44 U.S.C. § 3517(b) are subject to judicial review. "Congress will be presumed to have intended judicial review of agency action to be available unless there is persuasive reason to believe otherwise." *United States v. Fausto*, 484 U.S. 439, 452 (1988) (quotation marks omitted).

### Claim I
### OMB Unlawfully Denied Mr. Hyatt's Petition

69. Plaintiffs repeat and re-allege the averments of paragraphs 1–68 as if fully set forth herein.

70. The APA requires this Court to hold unlawful and set aside any agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law…[or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2).

71. Defendants' denial of Mr. Hyatt's Petition is a final agency action subject to judicial review under the APA.

72. Rules 111, 115, and 116 each contain "collections of information" subject to the substantive and procedural requirements of the PRA and yet have never been reviewed for PRA compliance and approved or disapproved by Defendants, as the PRA requires.

73. As such, Defendants' denial of Mr. Hyatt's Petition violates the aforementioned provisions in 5 U.S.C. § 706(2), and it is therefore unlawful.

### Claim II
### OMB's Notice of Action Violates the PRA and APA

74. Plaintiffs repeat and re-allege the averments of paragraphs 1–68 as if fully set forth herein.

75. The APA requires this Court to hold unlawful and set aside any agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law…[or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2).

76. Defendants' July 31, 2013 Notice of Action is a final agency action subject to judicial review under the APA.

77. The PRA requires Defendants to review and decide whether to approve proposed collections of information. 44 U.S.C. §§ 3504, 3507.

78. PTO Rules 111, 115, and 116 contain collections of information subject to the PRA and not subject to any statutory or regulatory exception to PRA requirements.

79. Defendants' July 31, 2013 Notice of Action determined that the collections of information contained in PTO Rules 111, 115, and 116 are not subject to the PRA.

80. As such, the July 31, 2013 Notice of Action violated the aforementioned provisions of 5 U.S.C. § 706(2), and it is therefore unlawful.

## Prayer For Relief

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment providing the following relief:

(A) A declaration that Defendants' denial of Mr. Hyatt's Petition was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, because it was issued in violation of the PRA and APA;

(B) A declaration that Defendants' July 31, 2013 Notice of Action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, with respect to PTO Rules 111, 115, and 116 because it was issued in violation of the PRA and APA;

(C) A declaration that the collections of information contained in PTO Rules 111, 115, and 116 are subject to the PRA;

(D) Vacatur of the Defendants' denial of Mr. Hyatt's Petition;

(E) Vacatur of Defendants' July 31, 2013 Notice of Action with respect to PTO Rules 111, 115, and 116;

(F) A declaration that, pursuant to 44 U.S.C. § 3512, persons who otherwise would have been required to respond to the collections of information contained in Rules 111, 115, and 116, including the implementation guidance contained in MPEP §§ 714.01(e), 714.02, 714.03(a), 714.12, 2266, and 2666, are not required to do so, because those collections of information do not display a valid OMB Control Number;

///

///

///

(G) An award of costs and reasonable fees and expenses of attorneys pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(H) Such other relief as the Court deems just and proper.

Dated: August 16, 2016

Respectfully submitted,

/s/ Robert T. Stewart
MARK A. HUTCHISON (4639)
ROBERT T. STEWART (13770)
HUTCHISON & STEFFEN, LLC
10080 W. Alta Drive, Suite 200
Las Vegas, NV 89145
(702) 385-2500
Fax: (702) 385-2086
mhutchison@hutchlegal.com
rstewart@hutchlegal.com

ANDREW M. GROSSMAN (*pro hac vice application forthcoming*)
MARK W. DELAQUIL (*pro hac vice application forthcoming*)
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W., Suite 1100
Washington, D.C. 20036
(202) 861-1697
Fax: (202) 861-1783
agrossman@bakerlaw.com

*Attorneys for Plaintiffs Gilbert P. Hyatt and American Association for Equitable Treatment, Inc.*