**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Gilbert P. Hyatt and American Association for Equitable Treatment, Inc., <br><br> Plaintiffs <br><br> v. <br><br> Office of Management and Budget and Shaun Donovan, in his official capacity as Director of the Office of Management and Budget, <br><br> Defendant | 2:16-cv-01944-JAD-GWF <br><br> **Order Granting Defendants' Motion to Dismiss** <br><br> [ECF No. 19] |

Anyone who has tried to register a car knows that government paperwork can be a bother. Even members of Congress have to go to the DMV, so they passed law that forces all federal agencies to go through a multi-step paperwork-reduction process any time an agency wants to ask the public for information: the little-known and seldom-litigated statute known as the Paperwork Reduction Act ("PRA").

The PRA's process starts with federal agencies themselves. When an agency plans to issue a rule or take an action that will include asking the public for information, it must first try to write the rule in a way that reduces the paperwork burden on the public. The agency must then send its proposed rule to the Office of Management and Budget ("OMB"), which reviews the rule for the same purposes. The OMB either approves the rule or sends it back to the agency with recommendations about how it can be less burdensome.

Congress also gave the public a remedy for when an agency violates the PRA. If a person wants to challenge whether an agency rule complies with the PRA, the statute offers an extensive remedial framework that can be raised either before agencies or in courts. After crafting this comprehensive scheme, Congress made clear that most of the OMB's PRA decisions would otherwise not be judicially reviewable: the PRA expressly bars judicial review of any OMB decision to "approve or not act upon" an information request that is part of an agency rule.

Plaintiffs believe that three patent regulations are too onerous because they require inventors to submit voluminous paperwork when applying for patents, so they brought this action for violations of the PRA. But I need not reach the merits of their argument because the PRA's judicial-review bar strips this court of jurisdiction over plaintiffs' claims.

The problem for the plaintiffs is that they have forgone the PRA's remedial process and instead have done exactly what the review-bar says they cannot: seek judicial review of the OMB's decision to not act on an information request that is part of agency rules. Although this case is somewhat unusual because the OMB never reviewed the Patent and Trademark Office's ("PTO's") rules in the first place as neither PTO never classified them as falling under the PRA. And the plaintiffs offer several statutory constructions to suggest that the judicial-review bar does not apply here. But the statute says what it says, and the plaintiffs seek what they seek. Given Congress's express language barring review for these sorts of challenges and the extensive scheme Congress created, I cannot find that I have subject-matter jurisdiction over this case. So I grant the defendant's motion dismiss.

**Background**

**A. Hyatt is forced to submit paperwork to the Patent and Trademark Office and asks the OMB to step in to reduce the paperwork burden.**

Plaintiff Hyatt is an inventor who has submitted patent applications to the PTO for examination.[1] Plaintiff American Association for Equitable Treatment, Inc. is a non-profit organization founded in 2016 to promote "fair, efficient, and effective" administration of the Patent Act. Hyatt alleges that the PTO in 2013 imposed on patent applicants "requirements for information collection," including requiring him to respond under the PTO's Patent Rules 111, 115, and 116.[2] These rules govern the process for amending patent applications and responding to the PTO's

---

[1] These facts are taken from the plaintiffs' complaint, and I assume that they are true for purposes of this motion. ECF No. 1.

[2] *See* 37 C.F.R. § 1.111; 37 C.F.R. § 1.115; 37 C.F.R. § 1.116.

objections during the patent-examination process.[3]

In late 2013, Hyatt asked the OMB to review the information requests contained in Patent Rules 111, 115, and 116. The OMB responded, explaining that it would not act on these rules because the agency did not classify them as information requests under the PRA—and the rules thus did not trigger the PRA's review process at all. Plaintiffs also reference throughout their complaint OMB's July 31, 2013, Notice of Action. The OMB similarly noted in this action that Rules 111, 115, and 116 are "items not subject to the Paperwork Reduction Act." Neither the PTO nor the OMB ever determined whether these patent rules comply with the PRA.

Plaintiffs then brought this action under the Administrative Procedure Act ("APA"), seeking to compel the OMB to act on these patent rules under the PRA. Plaintiffs contend that OMB's response to Hyatt's request was contrary to law under § 706(2) of the APA. Plaintiffs also contend that OMB's Notice of Action was contrary to law insofar as OMB determined that the PRA does not apply to Rules 111, 115, and 116.

**B.     The Paperwork Reduction Act**

The PRA was "enacted in response to one of the less auspicious aspects of the enormous growth of our federal bureaucracy: its seemingly insatiable appetite for data."[4] "Congress designated OMB the overseer of other agencies with respect to paperwork and set forth a comprehensive scheme designed to reduce the paperwork burden."[5] OMB is tasked with implementing policies for efficient information processing within and among agencies.[6]

After an agency decides to include an information request in one of its rules, it must submit

---

[3] *See* 46 Fed. Reg. 29,176, 29,182 (May 29, 1981) (Rule 111), as amended at 62 Fed. Reg. 53,132, 53,192 (Oct. 10, 1997), 70 Fed. Reg. 3880, 3891 (Jan. 27, 2005); 69 Fed. Reg. 56,482, 56,543 (Sept. 21, 2004) (Rule 115); 69 Fed. Reg. 49,960, 49,999 (Aug. 12, 2004) (Rule 116).

[4] *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 32 (1990).

[5] *Id.*

[6] *Id.*

that rule to OMB for approval.[7] The OMB then has three options: approve the rule, reject the rule and tell the agency to go rewrite it to be less burdensome; or stay silent. If the OMB chooses the third route, after a period of time, the agency can treat the OMB's silence as tacit approval and proceed with its rulemaking.[8]

A couple other PRA sections are relevant here. First, the PRA does not require agencies to undergo the paperwork-review process anytime they request information from the public, just when an information request meets the PRA's definition of "collections of information." This definition forms the crux of the parties' substantive dispute: the OMB believes that the PTO's rules do not qualify as "collections of information"; the plaintiffs believe they do. I need not delve any farther into this issue because, as I explain below, I have no jurisdiction to consider the merits of plaintiffs' claims in the first place.

Second, the PRA has a "public protection" provision that allows members of the public to challenge agency violations of the PRA.[9] Congress authorized any person to assert this protection "in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto."[10] Any person who believes that an agency's collection of information violates the PRA may, without penalty, refuse to comply. Congress also amended the PRA in 1995 to include a procedure for the public to petition the OMB "to review any collection of information conducted by or for an agency."[11]

Finally, and most important, Congress included in the PRA section 3507(d)—an express bar on judicial review for challenges to the OMB's rule-approval decisions. Section (d) contains six subsections, the sixth of which is the judicial-review bar. Because the plaintiffs' arguments rely in

---

[7] *See* 44 U.S.C. § 3507(a)(2).

[8] *Tozzi v. E.P.A.*, 148 F. Supp. 2d 35 (D.D.C. 2001).

[9] *See* 44 U.S.C. § 3512.

[10] *Id.*

[11] 44 U.S.C. § 3517(b).

large part on language in other subsections of (d), I review them here.

The other subsections of (d) contain various procedures for agencies and the OMB to follow when an information request is contained in an agency rule that is subject to the full notice-and-comment process. The section is laid out chronologically, from the start to the end of the review process. Subsection (d)(1) starts the process by instructing agencies to send the OMB proposed rules that contain information requests before they are finalized; subsection (d)(2) tells agencies what to include in their final rules; subsection (d)(3) explains that if the OMB stays silent for sixty days after it receives a proposed rule, it cannot go back and disapprove of it later; subsection (d)(4) carves out some exceptions where the OMB can go back and disapprove of some rules when if the agency did not follow the PRA's procedure for properly submitting its rule; and subsection (d)(5) explains that all of section (d) applies only to notice-and-comment rules, not other agency documents.

Finally, subsection (d)(6) contains a single sentence: "[t]he decision by [OMB] to approve or not act upon a collection of information contained in an agency rule shall not be subject to judicial review." There are no other qualifications or limitations on this judicial-review bar.

## Discussion

### A. Motion-to-dismiss standard for failure to allege standing

Under Article III of the United States Constitution, federal courts have limited jurisdiction and may only exercise the jurisdiction granted to them by Congress.[12] In a motion to dismiss for lack of subject-matter jurisdiction, the plaintiff has the burden of proving jurisdiction, but the court "must accept as true all material allegations of the complaint."[13]

### B. Congress foreclosed judicial review under the APA for the sort of challenge that plaintiffs raise.

Plaintiffs bring this action under the APA, which allows members of the public to argue in federal court that an agency's decisions were arbitrary and capricious.[14] Although there is a general

---

[12] *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).

[13] *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

[14] 5 U.S.C. § 701.

presumption that an agency's actions are judicially reviewable under the APA, when another "statute preclude[s] judicial review," the APA is no longer available to plaintiffs and federal courts lose their jurisdiction over the case.[15]

Whether and to what extent a statute precludes judicial review under the APA "is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved."[16] Review is precluded if there is "clear and convincing evidence of legislative intention to preclude review."[17]

Plaintiffs raise several statutory-construction arguments in an attempt to sidestep the PRA's judicial-review bar, but none are availing. They first argue that the PRA section housing the judicial-review bar—section (d)—is confined to OMB decisions made during an agency's rule-proposal process, not, as they bring here, a challenge to the OMB's decisions made about existing agency rules. To support their argument, plaintiffs point out that subsection (d)(1) applies to proposed rules, not existing rules. But this construction makes little sense. Section (d) expressly says that it is not confined to actions taken during the rule-proposal stage: several of (d)'s subsections apply to already-final agency rules.[18]

Plaintiffs next argue that applying section (d) (and the review bar) to all OMB decisions, not just those made during the rule-proposal stage, has an absurd result: the OMB could never revisit past agency rules to ensure that they comply with the PRA. I agree that this result occurs, but I don't see why it's absurd. Section (d) appears to give agencies and the public some sense of finality: if an agency notifies the OMB of an information request in a rule, and the OMB does not disapprove of the rule within a certain period of time, it cannot decide on a whim to revisit the rule at its pleasure

---

[15] 5 U.S.C. § 701(a)(1); *Adams v. FAA*, 1 F.3d 955, 956 (9th Cir. 1993).

[16] *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984).

[17] *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986); *Block*, 467 U.S. at 349, 350-51 (explaining that evidence of intent to preclude review need not exist in the strict evidentiary sense, but need merely be "fairly discernible in the statutory scheme").

[18] *See, e.g.,* 44 U.S.C.A. § 3507(d)(4) ("When a *final rule is published* in the Federal Register . . .") (emphasis added).

and disrupt the agency's and public's expectations. Section (d) also carves out situations in which the OMB can revisit rules—like if the agency "substantially modifies" a rule later.[19]

A better argument, never directly raised by the plaintiffs, is that section (d) applies only if an agency or the OMB first classifies an information request as one that falls under the PRA. This would make some sense given that most of the subsections discuss the process following an agency's prior determination that an information request falls under the PRA. The bar's language also supports this interpretation because it applies to the OMB's "decisions" about "collections of information," and it would be incongruous to say that an agency made a "decision" about a "collection of information" when it had previously concluded that an information request was not, in fact, a collection of information. It made a decision that information was not a collection of information, not that it would not act on an existing collection of information. This interpretation would leave open challenges in cases like this: where neither the OMB nor the agency ever determined that a rule qualified under the PRA in the first place, and the OMB is altogether abdicating its authority to review the rule under the PRA.

But I decline to adopt this interpretation for several reasons. First, although there is little authority interpreting the PRA's judicial-review bar, the case law that does exist suggests that the bar applies here. The most helpful case is a decision out of the U.S. District Court for the District of Columbia, *Tozzi v. E.P.A.*, in which the court held that it had no jurisdiction to consider a plaintiff's challenge to the OMB's approval of some EPA rules.[20] Tozzi claimed that the EPA issued rules

---

[19] 44 U.S.C.A. § 3507(d)(4)(D)(I). The plaintiffs also seem to argue that their case is outside of the review bar because they challenge the OMB's comments in a notice and response to Hyatt's petition, not the OMB's approval decisions in the context of a direct rule approval from an agency. But the judicial-review bar is tied to the OMB's decisions about information requests in agency rules, not the format of the plaintiffs' challenge to those rules. Plaintiffs also offer no persuasive reason why Congress would so plainly disallow judicial review through one provision of the PRA, while permitting a litigant to obtain the same review simply by sending the OMB a petition or challenging a notice.

[20] *Tozzi v. EPA*, 148 F. Supp. 2d 35, 47 (D.D.C. 2001).

without complying with parts of the PRA, so he sued the OMB for approving them.[21]

The court held that it had no jurisdiction over Tozzi's challenge because of the PRA's judicial-review bar.[22] It was not moved by Tozzi's arguments that he was not challenging the OMB's decision to approve the rule, but instead, was challenging "procedural violations that occur[ed] prior to OMB approval."[23] The court reasoned that the PRA's explicit bar on judicial review of the OMB's decisions about information requests extended to any challenge to the OMB's decision-making process, regardless of how the plaintiff framed the challenge—and that "no amount of statutory parsing or backdoor foray . . . [could] overcome such statutory clarity and command."[24]

Plaintiffs contend that *Tozzi* is distinguishable because, there, the OMB actually approved of an agency rule rather than abdicating its authority over the rule altogether. But the court's reasoning still applies here. Tozzi challenged the *procedural problems underlying the OMB's decision*, which Tozzi argued, meant that his challenge was outside of the judicial-review bar. And in essence that is what the plaintiffs argue here: the OMB made a procedural mistake in misclassifying the PTO's rules, so its decision is outside of the bar. As the court in *Tozzi* concluded, this sort of statutory parsing puts too fine a point on the judicial bar's language. I thus find the reasoning in *Tozzi* persuasive.[25]

I do not discount that there is a difference between the OMB affirmatively reviewing a rule and deciding not to act on it, and the OMB abdicating its authority to review the rule in the first

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] The government argues that the OMB is entitled to *Chevron* deference here, but agencies are not entitled to deference on questions about a court's jurisdiction. *Our Children's Earth Found. v. U.S. E.P.A.*, 527 F.3d 842 (9th Cir. 2008).

place (as it did here).[26] But this is a distinction without a difference for purposes of the judicial-review bar. Whether the OMB decided not to act on the PTO's rules because it believed they complied with the PRA, or whether it decided not to act because it believed the rules did not fall under the PRA at all—the result is the same: the OMB decided not to act on an information request contained in an agency rule.

Also illustrative of Congress's intent to foreclose review here is the PRA's public-protection provision. "[T]he existence of an alternative review procedure provide[s] 'clear and convincing evidence' of a legislative intent to preclude judicial review."[27] When an information request is never reviewed by the OMB (as was the case here), the public-protection provision kicks in, allowing the public to challenge an agency's attempt to apply that information request against them.[28] "Court

---

[26] Of course, there is some intrinsic value in forcing the OMB to meaningfully review an agency rule, rather than abdicating its duty to do any review because it doesn't think a rule falls under the PRA. But given Congress's express statement that plaintiffs cannot challenge these sorts of OMB decisions in federal court, I cannot find that Congress intended to carve out an exception to the review bar here.

[27] *Franklin*, 505 U.S. at 820; *see also, e.g., NLRB v. United Food & Commercial Workers Union, Local 23, AFL-CIO*, 484 U.S. 112, 130–33 (1987) (precluding review of purported APA challenge to unfair labor practice when National Labor Relations Act "exhaustively sets out the stages through which such charges may pass"); *Tutein v. Daley*, 43 F. Supp. 2d 113, 124 (D. Mass. 1999) (precluding APA challenge to Department of Commerce advisory guidelines when the Magnuson-Stevens Act sets forth an "elaborate and detailed administrative framework" for promulgating regulations and expressly allowing for judicial review).

[28] Congress also included yet another remedy for individuals like Hyatt: a right to petition the OMB directly and ask that it review an agency information request. 44 U.S.C. § 3517(b)(2). Tellingly, Congress left to the OMB the decision of what remedy, if any, is appropriate for these petitions. The statute instructs the OMB to take "appropriate" action, which is left undefined. *See United States v. George S. Bush & Co.*, 310 U.S. 371, 380 (1940) ("It has long been held that where Congress has authorized a public officer to take some specified legislative action when in his judgment that action is necessary or appropriate to carry out the policy of Congress, the judgment of the officer as to the existence of the facts calling for that action is not subject to review"). Plaintiffs contend that there are enforceable standards to determine when the OMB should take remedial action. But the question is not whether there are standards to determine whether a collection of information is subject to the PRA (which there are), the question is whether there are standards governing when the OMB should act on those collections (which there are not). Consistent with the judicial-review bar, Congress left it to the OMB to decide when to act on collections of information; it never intended to allow plaintiffs to bring these challenges to a federal court.

Page 9 of 11

decisions have affirmed that the section's intended protection can be asserted effectively in empowering members of the public to defend themselves against unapproved collections of information which are subject to the Act."²⁹ Rather than permit civil actions against the OMB by those who disagree with a particular decision under the PRA, Congress opted to protect the public at the juncture where they are most likely to suffer harm from an agency's noncompliance—when the agency seeks to impose a penalty on the person. Congress thus seems to have already addressed this situation in its statutory scheme. The PRA's legislative history similarly confirms that the judicial-review bar was meant to generally foreclose review of any OMB decisions to not act on agency rules under the PRA.³⁰

Congress apparently foresaw that allowing the public to bring an APA challenge anytime the OMB fails to act on alleged information requests would bring the agency to a standstill (perhaps creating more paperwork in court than what would be saved under the PRA). I cannot ignore the PRA's unqualified language barring judicial review of any OMB decision to "not act on" any information request in an agency rule. Plaintiffs concede that the thrust of their entire complaint is seeking review of the OMB's decision to not act on information requests in the PTO's rules. Because Congress precluded judicial review of those claims, I have no jurisdiction over this case.³¹

---

²⁹ H.R. REP. 104-37, 54, reprinted in 1995 U.S.C.C.A.N. 164, 217.

³⁰ *See* 126 Cong. Rec 31,228 (Dec. 1, 1980) (Rep. Horton) (noting that "decisions by OMB under this provision are not reviewable in court" and that "this paragraph in effect forbids court challenge of any decision to pursue any of the options open to OMB"); 126 Cong. Rec. 34,237 (Dec. 15, 1980) (Sen. Kennedy) ("[W]hile no action for judicial review can be brought if OMB approves or fails to act on a rule, there is no bar to judicial review if an information collection requirement in a rule is disapproved by OMB.").

³¹ Even if the PRA's judicial-review bar did not apply, the plaintiff's claims would be foreclosed under the APA anyway. To bring a challenge under the APA, plaintiffs must show that the OMB's decision to not act on the PTO's rules is a "final agency action." *See* 5 U.S.C. § 704. To be a final agency action, among other things, an agency decision must determine "rights or obligations" or "legal consequences.'" *California Sea Urchin Comm'n v. Bean*, 828 F.3d 1046, 1049 (9th Cir. 2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)). But the OMB's decision not to act on the PTO's rules creates neither rights nor legal consequences for plaintiffs. Hyatt remains free to invoke his right under the PRA not to comply with the PTO's rules; the reason for the OMB's refusal to act on the rule has no bearing on any legal consequence to the plaintiffs.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that defendant's **motion to dismiss [ECF No. 19] is GRANTED. This case is DISMISSED** for lack of subject-matter jurisdiction. The Clerk of Court is directed to **CLOSE THIS CASE.**

Dated this 7th day of September, 2017

_____
Jennifer A. Dorsey
United States District Judge