**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Gilbert P. Hyatt, et al., | Case No.: 2:16-cv-01944-JAD-EJY |
| Plaintiffs | **Order Granting OMB's Motion for Summary Judgment, Denying Plaintiffs' Motion for Summary Judgment, and Closing this Case** |
| v. | |
| Office of Management and Budget, et al., | [ECF Nos. 44, 46] |
| Defendants | |

Plaintiffs Gilbert Hyatt and the American Association for Equitable Treatment, Inc. (AAET) sue the Office of Management and Budget and director Mick Mulvaney (collectively, OMB) to challenge OMB's decision that certain information requested by the U.S. Patent and Trademark Office (PTO) is not subject to the Paperwork Reduction Act (PRA). The plaintiffs filed four separate petitions challenging information collected from the public under eight rules relating to the patent-examination process (the subject rules). After OMB denied the petitions based on exceptions to the regulatory definition of "information," the plaintiffs filed this suit under the Administrative Procedures Act (APA).

I previously dismissed this case for lack of subject-matter jurisdiction. After the Ninth Circuit reversed,[1] the plaintiffs filed an amended complaint.[2] The plaintiffs and OMB now bring cross-motions for summary judgment. The parties shout past each other in their briefs because they apply the PRA and its implementing regulations differently: the plaintiffs look to the subject rules in a vacuum while OMB looks to how they are implemented to collect information. Because the statute authorizing the plaintiffs' petitions to OMB, the plaintiffs' petitions, and

---

[1] *Hyatt v. Office of Mgmt. & Budget*, 908 F.3d 1165 (9th Cir. 2018).
[2] ECF No. 38.

OMB's denials of their petitions make clear that the plaintiffs challenge what the PTO requests when it implements the subject rules, I apply the relevant law to what the PTO requests when it implements the subject rules and find that it is not "information" within the meaning of OMB regulations. So I grant OMB's motion for summary judgment, deny the plaintiffs' motion, and close this case.

## Background

### I. The PRA and its scope

The PRA was "enacted in response to one of the less auspicious aspects of the enormous growth of our federal bureaucracy: its seemingly insatiable appetite for data."[3] "Congress designated OMB the overseer of other agencies with respect to paperwork and set forth a comprehensive scheme designed to reduce the paperwork burden"[4] and assigned OMB authority to administer the PRA.[5]

The OMB stated on the PRA's enactment that its intention was "to cover generalized solicitations of information, not particularized requests to particular individuals."[6] An agency action constitutes a "collection of information" under OMB regulations if it involves: (1) "the obtaining, causing to be obtained, soliciting, or requiring the disclosure to an agency, third parties or the public"; (2) "of information"; (3) "by means of identical questions posed to, or identical reporting,

---

[3] *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 32 (1990).
[4] *Id.*
[5] *See* 44 U.S.C. §§ 3503, 3504(a), (c).
[6] 47 Fed. Reg. 39,515, 39,521 (Sep. 8, 1982).

2

recordkeeping, or disclosure requirements imposed on"; (4) "ten or more persons."[7] And OMB further defined "information" to exclude, as relevant here, "[a] request for facts or opinions addressed to a single person" and "[f]acts or opinions obtained or solicited through nonstandardized follow-up questions designed to clarify responses to approved collections of information."[8]

## II. The subject rules

The subject rules relate to the patent-examination process, but not to the initial patent application (which has been approved by OMB). Instead, Rule 105 allows the patent examiner to request information that is reasonably necessary to properly examine the application.[9] Rule 111 allows an applicant faced with the PTO's adverse action after initial examination of his application to reply and request reconsideration or further examination.[10] Rule 115 allows an applicant to amend to his patent application before the first PTO action on the merits of the application.[11] Rule 116 allows an applicant faced with the PTO's final rejection of his application to amend his application.[12] Rules 130–132 allow an applicant to submit evidence by way of an affidavit or declaration for various reasons.[13] Section 2173.05(n) of the Manual for Patent Examining Procedure (MPEP) provides information that an examiner considers in

---

[7] 5 C.F.R. § 1320.3(c). This definition mirrors the statutory definition of "collection of information." 44 U.S.C. § 3502(3)(A)(i).

[8] 5 C.F.R. § 1320.3(h)(6), (9).

[9] 37 C.F.R. § 1.105.

[10] *Id.* § 1.111.

[11] *Id.* § 1.115.

[12] *Id.* § 1.116.

[13] *Id.* §§ 1.130–1.132.

3

determining a rejection on undue multiplicity and instructs the examiner to contact the applicant by telephone to request that the applicant select a subset of claims for examination.[14]

### III. The plaintiffs' petitions

"The PRA authorizes individuals to petition the OMB for a determination of whether they must provide information requested by or for a government agency."[15] 44 U.S.C. § 3517(b) "permits 'any person' to 'request the [OMB] Director to review any collection of information conducted by or for an agency to determine, if, under this subchapter, a person shall maintain, provide, or disclose the information to or for the agency.' After receiving the request, OMB 'shall . . . respond to the request within 60 days' and 'take appropriate remedial action, if necessary.'"[16]

In 2013, Hyatt petitioned OMB under § 3517(b) to review whether persons "who would have been covered by [PTO Rules 111, 115, and 116] are not required to have maintained, provided, or disclosed the collections of information contained therein at any time since January 1, 1994[,] because there was no valid OMB control number."[17] OMB denied Hyatt's petition on the basis that "what is collected is not considered information" under three exceptions to the regulatory definition of "information."[18] In 2017, AAET submitted three separate petitions asking OMB under § 3517(b) to review whether the PTO's "information collections" under

---

[14] ECF No. 43-6 at 242.

[15] *Hyatt*, 908 F.3d at 1169.

[16] *Id.* at 1172–73 (quoting 44 U.S.C. § 3517(b)).

[17] ECF No. 43-3 at 1–2. The collecting agency must "obtain[ ] from the [OMB] a control number to be displayed upon the collection of information" before conducting or sponsoring the collection of information. 44 U.S.C. § 3507(a)(3).

[18] ECF No. 43-3 at 21 (citing 5 C.F.R. § 1320.3(h)(1), (6), (9)). The PTO no longer contends that § 1320.3(h)(1) applies. *See* ECF No. 44.

4

Rules 105, 130, 131, and 132, and MPEP § 2173.05(n) "are subject to the PRA, and persons who were, are, or could be subject to [these rules] were not, and are not, required to have maintained, provided, or disclosed the collections of information contained therein at any time because there was no valid OMB Control Number."[19] OMB denied AAET's petitions for a "determination that information requests stemming from [Rules 105, 130, 131, and 132, and MPEP § 2173.05(n)] are subject to the PRA[,]" citing the same three exceptions to the definition of information.[20]

## Discussion

### I. Standard of review

Under the APA, courts must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[21] "In deciding whether to grant summary judgment on an APA challenge, the district court 'is not required to resolve any facts.' Instead, the court simply determines 'whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'"[22]

"At all times, the plaintiff[s] carr[y] the burden of showing that any decision or action made by the agency was arbitrary and capricious."[23] The plaintiffs argue that, because OMB is seeking the benefit of exceptions to OMB's regulatory definition of "information," OMB bears

---

[19] ECF Nos. 43-4 at 173–74; 43-5 at 134–35 (petitioning whether persons were "required to have maintained, provided, disclosed or responded to these information collections at any time because there was, and remains, no valid OMB Control Number"); 43-6 at 197–98 (same).

[20] ECF No. 43-6 at 241 (citing 5 C.F.R. § 1320.3(h)(1), (6), (9)).

[21] 5 U.S.C. § 706(2)(A).

[22] *Friends of Animals v. Silvey*, 353 F. Supp. 3d 991, 1003 (D. Nev. 2018) (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985)).

[23] *John v. Sec'y of Interior*, 350 F. Supp. 3d 945, 949 (D. Nev. 2018) (citing *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976)).

5

the burden of proving their applicability.[24]  But the plaintiffs rely on cases in which the defendant claimed "the benefits of an exception to the prohibition of a statute," such as an exception allowing a defendant bank to show that an anticompetitive merger is in the public interest.[25]  OMB's definition of "information" instead serves to exclude certain information requested by an agency from the scope of the PRA.  The plaintiffs do not identify, and I have not found, a case shifting the burden to an agency to prove that an exclusion in a regulatory definition is applicable.  So the burden of proof remains with the plaintiffs.[26]

## II. Deference to OMB interpretations of its own regulations

OMB argues that its denials of the plaintiffs' petitions are entitled to deference.[27]  The plaintiffs respond that deference under the United States Supreme Court's decision in *Auer v.*

---

[24] ECF No. 45 at 8.

[25] *United States v. First City Nat. Bank of Houston*, 386 U.S. 361, 366 (1967); *see also E.E.O.C. v. Kamehameha Sch./Bishop Estate*, 990 F.2d 458, 460 (9th Cir. 1993), *as amended on denial of reh'g* (May 10, 1993) (defendant bears burden of proving exemptions to prohibition of employment discrimination); *Monarch Tile, Inc. v. City of Florence*, 212 F.3d 1219, 1222 (11th Cir. 2000) (defendant bears burden of proving exemption to prohibition of discharge of hazardous substance); *Nixon-Egli Equip. Co. v. John A. Alexander Co.*, 949 F. Supp. 1435, 1442–43 (C.D. Cal. 1996) (defendant bears burden of proving "statutory exception" to prohibition of discharge of hazardous substance and describing a "statutory exception" as a "situation which would otherwise fall within the proscription of a statute but, for policy reasons, is not implicated by the statute"); *Apilado v. N. Am. Gay Amateur Athletic All.*, 792 F. Supp. 2d 1151, 1159 (W.D. Wash. 2011) (defendant bears burden of proving "distinctly private" exception to prohibition of discrimination in public accommodations).

[26] *See also E.E.O.C. v. Chicago Club*, 86 F.3d 1423, 1430–31 (7th Cir. 1996) ("It seems to us that the rule allocating the burden of proof to one seeking the benefit of a statutory exception has been allowed to mutate to its present form in which the rule has escaped the confines of its basis in reason.  The distinction between statutory exceptions and definitional exclusions may hold important differences in the rules for allocating burdens of proof.").

[27] ECF No. 44 at 19–20.

6

*Robbins* does not apply because OMB does not identify an ambiguity in its own regulations and the denials do not reflect OMB's fair and considered judgment.[28]

Under *Auer*, courts must defer to "an agency's interpretation of its own ambiguous regulations, which controls unless 'plainly erroneous or inconsistent with the regulation,' or where there are grounds to believe that the interpretation 'does not reflect the agency's fair and considered judgment of the matter in question.'"[29] The Supreme Court recently reaffirmed *Auer* in *Kisor v. Wilkie*, but emphasized that courts must: (1) "exhaust all the 'traditional tools' of construction" to determine that the regulation is "genuinely ambiguous"; and (2) determine that the agency's interpretation is "authoritative," implicates the agency's substantive expertise, and reflects the agency's "fair and considered judgment."[30] Where "*Auer* deference is not warranted, an agency's interpretation of an ambiguous regulation" is accorded "a measure of deference" under *Skidmore v. Swift & Co.* that is "proportional to the 'thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'"[31]

OMB argues that I must defer to its interpretation of its own regulations defining "information."[32] But OMB does not identify any ambiguities in the regulations that it relied on

---

[28] ECF No. 45 at 23–24.

[29] *Turtle Island Restoration Network v. United States Dep't of Commerce*, 878 F.3d 725, 733 (9th Cir. 2017) (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)).

[30] *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415–18 (2019) (quotations omitted).

[31] *Indep. Training & Apprenticeship Program v. California Dep't of Indus. Relations*, 730 F.3d 1024, 1036 (9th Cir. 2013) (quotation omitted).

[32] ECF No. 44 at 14.

7

in denying plaintiffs' petitions—the exceptions to the definition of "information."[33] So I accord deference to OMB's denials only insofar as they have the power to persuade.

### III. Single-person exception

OMB's regulations define "information" to exclude "[a] request for facts or opinions addressed to a single person."[34] The subject rules are applied in the context of individual patent applications and permit interaction between the patent examiner and patent applicant. Rules 111, 115, and 116 permit individual patent applicants to submit additional information to the examiner either before PTO's initial action or after an adverse non-final or final action.[35] Rules 105 and 130–132 and MPEP § 2173.05(n) permit examiners to request specific information and allow individual applicants to provide information specific to their application, as demonstrated by examples attached to the plaintiffs' petitions.[36] The subject rules thus constitute requests for facts or opinions addressed to a single person and are excluded from the scope of the PRA. The plaintiffs offer several arguments against this conclusion. I address each in turn.

Several of the plaintiffs' arguments look to the subject rules themselves instead of how they are implemented to collect information in the patent-examination process.[37] But § 3517(b)

---

[33] *Id.*; ECF No. 48 at 6.

[34] 5 C.F.R. § 1320.3(h)(6).

[35] *See* 46 Fed. Reg. 29,176, 29,177 (May 29, 1981) (Rule 111 provides for "replies by the patent owner" and Rule 115 provides for "amendments by the patent owner"); 69 Fed. Reg. 49,960, 49,960 (Aug. 12, 2004) (Rule 116 permits "amendments after a final rejection or other final action"). OMB argues that Hyatt waived his ability to contest the single-person exception's applicability to Rules 111, 115, and 116 by not raising it below. ECF No. 44 at 21–22. But "[i]f the agency actually addressed the issue, the policies underlying the exhaustion doctrine are satisfied." *SSA Terminals v. Carrion*, 821 F.3d 1168, 1174 (9th Cir. 2016) (quotations and alterations omitted). Because OMB addressed the single-person exception in its denial of Hyatt's petition, he has not waived this argument.

[36] *See, e.g.*, ECF No. 43-4 at 184–86.

[37] ECF Nos. 45 at 25 (subject rules are rules of general applicability), 26 (information submitted will differ for every collection of information), 26 (subject rules themselves are collections of

permits petitions to "request the [OMB] Director to review any collection of information . . . to determine, *if, under this subchapter, a person shall maintain, provide, or disclose the information* to or for the agency."[38] The plaintiffs' petitions thus sought review of whether persons must provide or disclose information to PTO, and OMB denied the petitions on the basis that "what is collected" is excepted from its definition of information.[39] The OMB thus urges looking to "what is sought by the PTO under the [s]ubject [r]ules."[40] The plaintiffs agree with this approach when it suits them, such as when pointing to form paragraphs used to "implement[]" the subject rules.[41] Because § 3517(b) only allows petitions for an OMB determination of whether or not individuals must comply with information requests from an agency, I will not look to the subject rules in a vacuum and ignore the reality that PTO examiners use the subject rules to request and collect information from specific persons.[42]

The plaintiffs read the phrase "request for facts or opinions addressed to a single person" to refer to an agency's request for a person's "request for facts or opinions addressed to a single person"—a third party.[43] This interpretation makes little sense. Assuming the premise that "requests for requests" are excepted, despite the PRA's intention "to cover generalized

---

information), 26–27 (subject rules themselves are reporting requirements); 53 at 9 (subject rules are rules of general applicability).

[38] 44 U.S.C. § 3517(b).

[39] ECF Nos. 43-3 at 1–2, 21; 43-4 at 173–74; 43-5 at 134–35; 43-6 at 197–98, 241.

[40] ECF No. 48 at 4.

[41] *See, e.g.*, ECF No. 45 at 17, 21.

[42] To do otherwise would effectively allow the plaintiffs to challenge OMB's earlier determination that Rules 111, 115, and 116 were not subject to the PRA, which "is foreclosed." *Hyatt*, 908 F.3d at 1169, 1170 n.5.

[43] ECF No. 45 at 24–25.

9

solicitations of information, not particularized requests to particular individuals,"[44] the plaintiffs do not explain, and I cannot perceive, why such an exception would be limited to requests for requests *addressed to a specific person*. So I will not adopt this strained reading of the single-person exception.[45]

The plaintiffs also argue that the subject rules are applied identically to multiple persons because examiners use form paragraphs.[46] But the patent examiner has discretion in using form language,[47] and certain form paragraphs themselves include brackets for applicant-specific information.[48] And if I were to infer that the single-person exception does not apply because an examiner uses model language, that would encourage the plaintiffs and others to parse agency requests to specific persons for common language, inviting an impossible line-drawing exercise. So I find that the plaintiffs have not shown that OMB's denials of their petitions—on the basis that the information requested and collected under the subject rules falls within the single-person exception—were not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[49] I thus grant OMB's motion for summary judgment, deny the plaintiff's motion for summary judgment, and close this case.[50]

---

[44] 47 Fed. Reg. at 39,521.

[45] I am also persuaded by OMB's explanation of the regulatory history of the single-person exception. ECF No. 48 at 7–9.

[46] ECF Nos. 45 at 21; 53 at 9–10.

[47] ECF No. 43-4 at 170.

[48] *See, e.g.*, MPEP Form Paragraph 7.66 (applying Rule 132).

[49] 5 U.S.C. § 706(2)(A).

[50] Because I base my decision on this reason, I need not and do not address the parties' other arguments for summary judgment.

10

**Conclusion**

**IT IS THEREFORE ORDERED** that the plaintiffs' motion for summary judgment **[ECF No. 46] is DENIED** and OMB's motion for summary judgment **[ECF No. 44] is GRANTED**. I grant summary judgment in favor of OMB on all claims. The Clerk of Court is directed to **ENTER FINAL JUDGMENT in favor of Mick Mulvaney and the Office of Management and Budget and against Gilbert Hyatt and the American Association for Equitable Treatment, Inc. and CLOSE THIS CASE**.

Dated: March 16, 2020

_____
U.S. District Judge Jennifer A. Dorsey